**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| GENGHISCOMM HOLDINGS, LLC, | |
| Plaintiff, | Case No. 1:26-cv-477 |
| v. | JURY TRIAL DEMANDED |
| APPLE INC. | |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code, against Defendant Apple Inc. ("Apple") that relates to U.S. patents owned by GenghisComm, including at least U.S. Patent Nos.: 9,768,842 (the "'842 Patent"); 10,200,227 (the "'227 Patent"); 10,389,568 (the "'568 Patent"); 11,252,005 (the "'005 Patent"); 11,381,285 (the "'285 Patent"); 11,223,508 (the "'508 Patent"), and 11,804,882 (the "'882 Patent") (collectively, the "Patents-in-Suit").

## THE PLAINTIFF GENGHISCOMM

1.    Plaintiff GenghisComm Holdings, LLC ("GenghisComm") is a Colorado limited liability company with an address at 942 Broadway Street, Suite 314c, Boulder, Colorado 80302.

2.    GenghisComm is the owner of record and assignee of each of the Patents-in-Suit.

3.    GenghisComm has the exclusive right to sue and the exclusive right to recover damages for infringement of the Patents-in-Suit during all relevant time periods.

4.    Steve Shattil, Director of GenghisComm, is the named inventor on the patents and holds advanced degrees in physics and electrical engineering.

5.    Mr. Shattil invented technologies which are essential parts of cellular and wireless standards.

1

6.     Neither Mr. Shattil nor GenghisComm had any involvement in setting the 4G/LTE or 5G standards.

7.     Nonetheless, the 4G/LTE and 5G standards setting bodies, (e.g., 3GPP and ETSI, etc.) included the technology that GenghisComm disclosed and claimed in these standards.

8.     Standard setting bodies adopted the technology that GenghisComm taught and disclosed into the 4G/LTE and 5G Standards.

9.     GenghisComm and Steve Shattil have no FRAND obligations.

10.     Any FRAND valuation framework does not apply to GenghisComm's patents because GenghisComm has no FRAND obligations.

11.     Others have made extensive efforts to challenge the validity of the GenghisComm patents, none of which have succeeded.

12.     Unified Patents filed an *ex parte* reexamination of 10,200,227 (Reexam no. 90/019,411).

13.     In October of 2025, the PTAB issued an Order reversing the Examiner's reexamination.  Exhibit C.

14.     On February 26, 2026, the USPTO issued a Reexamination Certificate.  Exhibit D.

15.     Samsung filed 9 IPRs on GenghisComm patents: IPR2025-00780, IPR2025-00781, IPR2025-00788, IPR2025-00789, IPR2025-00790, IPR2025-00791, IPR2025-00792, IPR2025-00793, and IPR2025-00899.

16.     The PTAB denied all of Samsung's IPRs.

17.     Samsung filed five requests for *ex parte* reexamination of other GenghisComm patents.

18.    For example, Samsung's *ex parte* reexamination request as to 11,424,792 (Reexam 90/019,848) resulted in a January 26, 2026 Reexamination Certificate.  Exhibit A.

19.    Samsung's requested *ex parte* re-examinations are pending for three of the Patents-in-suit:

| Patent | Reexamination |
|---|---|
| 9,768,842 | 90/015,639 |
| 11,252,005 | 90/019,847 |
| 11,381,285 | 90/015,417 |

20.    Even from the patents in ongoing reexaminations, many of the claims in this case are not the claims for which the USPTO ordered reexaminations.

21.    The Court in the Eastern District of Texas issued a Claim Construction Order on December 1, 2025.  Exhibit B.

22.    Among other rulings, the claim construction Order rejected arguments that claims were indefinite.

## DEFENDANT APPLE

23.    Defendant Apple Inc. ("Apple") maintains regular and established offices in this District, including at:

(a)  6900 W. Parmer Lane, Austin, Texas (Capstone)

(b)  12545 Riata Vista Circle, Austin, Texas (Apple Americas Operations Center consisting of several buildings)[1] and

(c)  320 S. Capital of Texas Highway, Austin, Texas (Apple Lonestar Design Center).

24.    Apple also operates a specialized 244,000-square-foot production facility in northwest Austin where the Mac Pro is assembled.

---

[1] Apple "Apple expands in Austin" (Nov. 20, 2019), available at https://www.apple.com/newsroom/2019/11/apple-expands-in-austin/.

25.    In 2018, Apple announced a $1B expansion in Austin.[2]

26.    In 2019, Apple expanded its presence in Austin, Texas with its new $1 billion, 3-million-square-foot campus.  The campus was planned to initially house 5,000 employees, with the capacity to grow to 15,000, opening in 2022.  At that time, Apple had approximately 7,000 employees in Austin.[3]

27.    As of 2018, Apple employed at least 6,200 people in Austin.

28.    Its second office there adds 5,000 more employees, with the potential to add another 10,000 on top of that, which would make the company Austin's largest employer.[4]

29.    In 2023, Apple began an expansion of its campus located at 6900 Parmer Lane.[5] Called "Capstone Phase Two AC09 and Capstone Phase Two AC07", the projects are a four-story and a five-story building, respectively.  The two buildings will add 419,441 square feet of office space.  Each building was expected to cost $120 million.[6]

30.    Apple is one of the largest employers in Austin, Texas. [7]

---

[2] https://www.apple.com/newsroom/2018/12/apple-to-build-new-campus-in-austin-and-add-jobs-across-the-us/.

[3] https://arstechnica.com/gadgets/2018/12/apple-will-spend-1-billion-and-hire-up-to-15000-people-for-new-austin-office/.

[4] https://arstechnica.com/gadgets/2018/12/apple-will-spend-1-billion-and-hire-up-to-15000-people-for-new-austin-office/.

[5] https://appleinsider.com/articles/23/01/11/apple-spending-240m-to-expand-its-austin-texas-campus.

[6] https://therealdeal.com/texas/austin/2023/01/09/apple-plans-another-expansion-of-austin-office-campus/.

[7] https://www.austinchamber.com/economic-development/austin-profile/major-employers; https://austinrelocationguide.com/largest-employers-in-austin/.

31.     Apple has relocated many jobs from California to Texas.[8]

32.     Today, Apple owns or leases at least 1.7 million square feet of office space in Austin, spread across its Americas Operations Center, Parmer Riata, Parmer Business Park, and Capital Ridge.[9]

33.     Apple employees in Austin must either store their relevant documents and files in Austin or have seamless access to them from Austin in order to do their jobs.

34.     Apple's Austin engineering hub is one of their primary locations for Wireless System-on-Chip (SoC) and Cellular Architecture.

35.     Apple's Austin-based engineers have worked on the embedded software (Layer 1/RF firmware) that controls the 5G/4G radio hardware.

36.     Among other relevant Apple employees in Austin, Texas is Harsha Hanumanthaiah.[10]

37.     Discovery is expected to specifically identify other relevant individual Apple employees in Austin, Texas.

38.     Apple is currently hiring a SoC Design Verification Engineer in Austin Texas and Apple describes the job as[11]:

> Do you have a passion for invention and self-challenge? This position allows you to be a part of one of the most innovative and key projects that Apple's Silicon Engineering Group has embarked upon to date.

---

[8] https://www.chron.com/culture/article/apple-california-texas-austin-18610773.php.

[9] https://aquilacommercial.com/learning-center/apple-austin-offices-headquarters-history-details-predictions/.

[10] https://www.linkedin.com/in/harshahanumanthaiah/.

[11] https://jobs.apple.com/en-us/details/200625848-0157/soc-design-verification-engineer?board_id=17682.

As part of our team, you will have the opportunity to take the lead and contribute to verifying a set of sophisticated SOCs that are driving Apple's flagship Cellular 5G platform. As a member of this team you will integrate multiple sophisticated IP-level DV environments, craft highly reusable UVM TB, implement effective coverage-driven and advised test infrastructure, deploy new tools, develop and deploy AIML methodology, and implement ideas to improve the quality of tape-out readiness of all our chips.

By collaborating with other product development groups across Apple, you can push the industry boundaries of what complex SOC chips can do and improve the product experience for our customers across the world! You will be able to learn all aspects of a large-scale SOC, different types of SOC architecture, many high-speed layered protocols, the industry's standard methodologies on low-power architecture, outstanding DV methodology, verification on accelerated platforms, knowledge of Cellular protocol, FW-HW interactions, complexities of multi-chip SOC debug architecture, etc.

39.     Previously, Apple was hiring PHY Systems Engineer(s) in Austin, Texas.  Apple lists the "key qualifications" as: "Deep-knowledge of communication system theory and signal processing will be important for this role to design algorithms such as timing recovery, filter design, signal estimation and detection, automatic gain control, RF impairments estimation and correction, channel estimation, equalization, forward-error correction, OFDM, MIMO detection, etc."  One job function is to "Collaborate with digital designers and firmware developers to realize algorithms with power and area efficient implementation."[12]

40.     Apple also owns and operates at five four retail stores in this District, including two Apple stores in Austin, Texas, two in San Antonio, Texas and one in El Paso, Texas.[13]

41.     Apple makes, uses, imports, sells and offers for sale wireless mobile devices including smartphones, tablets, and watches) and related applications and services.

42.     Upon information and belief, Apple can be served through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

---

[12] https://jobs.apple.com/en-us/details/200452242/phy-systems-engineer

[13]https://www.apple.com/retail/storelist/.

## JURISDICTION AND VENUE

43.     This Complaint states causes of action for patent infringement arising under the

patent laws of the United States, 35 U.S.C. § 1 *et seq.,* and, more particularly 35 U.S.C. § 271.

44.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331

and 1338(a) in which the district courts have original and exclusive jurisdiction of any civil

action for patent infringement.

45.     Apple is subject to this Court's general personal jurisdiction pursuant to due

process due at least to its substantial business conducted in this District, including: (i) having

solicited business in the State of Texas, transacted business within the State of Texas and

attempted to derive financial benefit from residents of the State of Texas in this District,

including benefits directly related to the instant patent infringement causes of action set forth

herein; (ii) having placed its products and services into the stream of commerce throughout the

United States and having been actively engaged in transacting business in Texas and in this

District, and (iii) having committed the complained of tortious acts in Texas and in this District.

46.     Apple, directly and/or through subsidiaries and agents (including distributors,

retailers, and others), makes, imports, ships, distributes, offers for sale, sells, uses, and advertises

(including offering products and services through its website as well as other retailers) its

products and/or services in the United States, the State of Texas and the Western District of

Texas.

47.     Apple, directly and/or through its subsidiaries and agents (including distributors,

retailers, and others), has purposefully and voluntarily placed one or more of its infringing

products and/or services, as described below, into the stream of commerce with the expectation

that they will be purchased and used by consumers in the Western District of Texas.  These

infringing products and/or services have been and continue to be purchased and used by

consumers in the Western District of Texas.  Apple has committed acts of patent infringement

within the State of Texas and, more particularly, within the Western District of Texas.

48.     Venue is proper in this District under §1400 (b), which provides that "Any civil

action for patent infringement may be brought in the judicial district where the defendant resides,

or where the defendant has committed acts of infringement and has a regular and established

place of business."  Venue is proper as to Defendant because it has committed acts of patent

infringement in this District and because it has multiple regular and established places of

business in this District, as shown above.

## APPLE'S INFRINGING PRODUCTS

49.     Apple's use of the LTE/4G and 5G Standards infringed GenghisComm's patent

claims.

50.     Confidential fact discovery, including technical information from Apple and its

third party chipset suppliers (e.g. Qualcomm), will further confirm that Apple's devices infringe

GenghisComm's patent claims.

51.     Apple has been directly infringing claims of the Patents-in-Suit under 35 U.S.C. §

271(a) by making, using, offering for sale, selling, and/or importing the below accused

smartphones, tablets, and other mobile wireless devices in this District.

52.     Apple's infringing products include its mobile devices that have LTE/4G network

connectivity and meet the LTE standards and were sold or used in the U.S., including, but not

limited to: iPad Pro, iPad, iPad Mini, iPad Air, iPhone SE, iPhone 11, 12, 14, 14, SE, 15, 16, and

17 Series (including Mini, Pro and Pro Max versions of each), Watch Series 6, Watch Series 7,

Watch Series 8, Watch Series 9, Watch SE, Watch Ultra, Watch Ultra 2. Apple's infringing

LTE/4G products are collectively referred to as the "Apple's LTE/4G Devices."  Apple's

LTE/4G Devices include devices that may also be 5G compliant.

53.    Apple's infringing products further include its mobile devices that have 5G network connectivity and meet the 5G wireless standards and were sold or used in the U.S., including, but not limited to, the following products released after 2020: iPad Pro, iPad, iPad Mini, iPad Air, iPhone 12, 14, 14, SE, 15, 16, and 17 Series (including Mini, Pro and Pro Max versions of each), Apple Watch Series 11, Apple Watch Ultra 3, Apple Watch SE (3rd Generation) (GPS + Cellular).  Apple's infringing 5G products are collectively referred to as the "Apple's 5G Devices."

54.    Apple's LTE/4G Devices comply with the mandatory requirements of 3GPP TS 36.211 version 8.7.0 ("LTE Standard").

55.    4G/LTE phones must comply with the following sections of the 3GPP TS 36.211 version 8.7.0 LTE Standard:

5.1.1 Physical Channels
5.2 Slot structure and physical resources
5.2.1 Resource Grid
5.3 Physical uplink shared channel
5.3.1 Scrambling
5.3.2 Modulation
5.3.3 Transform Precoding
5.3.4 Mapping to Physical Resources
5.6 SC-FDMA Baseband Signal Generation
5.8 Modulation and Upconversion
7.1 Modulation mapping
7.2 Pseudo-random sequence generation

56.    Apple's 5G Devices comply with the mandatory requirements of 3GPP TS 38.211 Version 15.2.0 ("5G Standard").

57.    5G phones must comply with the following sections of 3GPP TS 38.211 Version 15.2.0 5G Standard:

4.2 Numerologies
4.4.2 Resource Grid
4.4.4 Resource Blocks
4.4.4.1 General

5.1 Modulation mapper
5.2.1 Pseudo-random sequence generation
5.3 OFDM baseband signal generation
5.3.1 OFDM baseband signal generation for all channels except PRACH
5.4 Modulation and upconversion
6.3.1 Physical uplink shared channel
6.3.1.1 Scrambling
6.3.1.2 Modulation
6.3.1.4 Transform Precoding
6.4.1.1 Demodulation reference signal for PUSCH
6.4.1.2 Phase-tracking reference signals for PUSCH
6.4.1.4 Sounding reference signal
7.2 Pseudo-random sequence generation

## APPLE'S DIRECT INFRINGEMENT, INDUCEMENT OF INFRINGEMENT, AND CONTRIBUTORY INFRINGEMENT

58.    Defendant Apple has been directly infringing claims of the Patents-in-Suit under

35 U.S.C. § 271(a) by using, making, offering for sale, selling, and/or importing the below

accused smartphones, tablets, and other mobile wireless devices in this District and elsewhere in

the United States.

59.    Apple used the method claims itself and directly infringed the method claims.

60.    On information and belief, Apple, including its officers, directors, employees, and

agents use Apple's 4G/LTE Devices and Apple's 5G Devices in a manner that practices all the

steps in method claims.

61.    On information and belief, Apple performs all of the steps of the method claims

itself, including in testing, development, demonstrations, showcases, customer support, and

training.  *E.g.* testing, development, demonstrations, showcases, customer support, and training.

https://www.reddit.com/r/apple/comments/jbva03/supercut_of_the_words_5g_being_said_at_the

_iphone/ (Supercut of Apple saying the words "5G" at iPhone 12 keynote.)

62.    In addition, Apple directed end users to practice the method claims.

63.    Apple controlled whether its 4G/LTE and 5G products use the 4G/LTE and 5G

standards and practiced the method claims.

64.     Apple decided to sell products in the U.S. that meet the 4G/LTE and 5G standards and derived a large direct financial benefit from doing so.

65.     When a user used an Apple 4G/LTE or 5G product, the user and the Apple products acted under Apple's direction and control with respect to whether the claimed methods are practiced.

66.     For example, Apple phones with 4G/LTE capability connected to 4G/LTE networks automatically if they were within range of the network.

67.     For example, Apple phones with 5G capability connected to 5G networks automatically if they were within range of the network.

68.     Apple's 5G Devices are designed to connect to 5G networks automatically.

69.     Apple's default 5G setting on an iPhone is "5G Auto" (or "5G Automatic").

70.     In 5G Auto, the iPhone automatically connected to 5G when the carrier's network is available and the task requires high speed (like downloading a movie or FaceTime HD) without user interference or user action.

71.     Apple's phones show a 4G/LTE/5G indicator bar.

72.     Apple has the ability to control the infringing activity and retains control over its phones and other devices even after sale through preset settings and unchangeable functions and also by Apple sending software and security updates over the air to its phones.

73.     Apple sent over-the-air (OTA) updates to its phones that directly relate to 4G/LTE and 5G network usage, 5G performance, and 5G capabilities.  These updates can take the form of iOS software updates or carrier settings updates.

74.     Apple designed the accused products to perform the method steps automatically

whenever Apple's products are used.

75.    End users, and the Apple products, are under Apple's direction and control with respect to the infringing steps.

76.    Alternatively, the end user of the Apple devices is the direct infringer of the method claims and Defendant Apple has also been, and now is, actively inducing infringement of the Patents-in-Suit under 35 U.S.C. § 271(b) by performing, or inducing end users to perform, every step in the claimed methods. *E.g.* https://www.apple.com/iphone/cellular/ and https://www.adsoftheworld.com/campaigns/5g-just-got-real (Chris Rock ad for iPhone 12 with 5G).

77.    Defendant Apple knew about GenghisComm's patents, given GenghisComm's notice letters discussed in this Complaint.

78.    Defendant Apple knew that GenghisComm's patents were essential to the 4G/LTE and 5G standards.

79.    Defendant Apple knew that GenghisComm stated that its patents were essential to the 4G/LTE and 5G standards.

80.    Apple intentionally complied with the 4G/LTE and 5G standards.

81.    Apple intentionally intended its phones to function as described in the 4G/LTE and 5G standards.

82.    Apple intended its phones to function as described in GenghisComm's claims.

83.    Apple specifically intended its phones to function as described in the GenghisComm patent claims and for users to use them as 4G/LTE and 5G devices and as described in the GenghisComm patent claims.

84.    Apple actively encouraged infringement by designing its accused products to

perform the method steps automatically whenever Apple's products are used, advertising compliance with the 4G/LTE and 5G standards, and submitting its products for 4G/LTE and 5G compliance and interoperability testing and certification to ensure that they infringed.

85.     Apple knew that its phones practiced the method claims.

86.     Apple has no opinion of counsel from before the case was filed stating that Apple did not infringe.

87.     The above evidence confirms that Defendant Apple knowingly induced infringement and possessed specific intent to encourage others' inducement.

88.     Defendant Apple actively encouraged users of its 4G/LTE and 5G smartphones, tablets, and other mobile wireless devices to use its devices in a manner that infringes GenghisComm's patents.

89.     Alternatively, if the end user of the Apple devices is the direct infringer of the method claim, Defendant Apple has been contributorily infringing of the Patents-in-Suit under 35 U.S.C. § 271(c) because Apple also offered to sell, and sold, within the United States, and imported into the United States 4G/LTE and 5G smartphones, tablets, and other devices that constitute a material part of the invention (if not the entire invention), knowing that Apple especially made them for use in an infringement of GenghisComm's patent.

90.     For purposes of contributory infringement analysis, the components of Apple's smartphones, tablets, and other devices at issue are the software and hardware that allow the devices to operate on 4G/LTE or 5G cellular networks (the "4G/LTE or 5G Cellular Radio Components").

91.     The 4G/LTE or 5G Cellular Radio Components are separate and distinct from the other functions of Apple's smartphones, tablets, and other devices and contributory infringement

should be analyzed based on the separable 4G/LTE or 5G Cellular Radio Components rather than the entire products.

92.    The 4G/LTE or 5G Cellular Radio Components are not staple articles of commerce suitable for substantial non-infringing uses.[14]

93.    For purposes of contributory infringement analysis, the components of Apple's smartphones, tablets, and other devices at issue are the software and hardware that allow the devices to operate on 4G/LTE or 5G cellular networks (the "4G/LTE or 5G Cellular Radio Components").

94.    Apple sold and imported the 4G/LTE and 5G smartphones, tablets, and other devices into the United States.

95.    Apple knew its products (e.g. phones) were specifically designed or adapted for use in the infringing processes because Apple designed the products, including to meet the 4G/LTE and 5G standards, and Apple advertised and marketed the phones as meeting the 4G/LTE and 5G standards.  Because Apple's 4G/LTE and 5G products are 4G/LTE and 5G phones, there is no substantial non-infringing use.

96.    Apple makes and sells its products such that they are not just capable of performing the methods, they automatically perform the method steps, and without user intervention.

## APPLE'S KNOWLEDGE OF THE PATENTS-IN-SUIT AND CONTINUED INFRINGEMENT DESPITE THAT KNOWLEDGE

97.    On October 29, 2020, counsel for GenghisComm sent a letter to Apple, informing Apple of GenghisComm's patents, and how Apple's devices with LTE/4G and 5G cellular connectivity infringed GenghisComm's patents.  It was emailed and UPS confirmed that the

---

[14] *See, e.g. Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321 (Fed. Cir. 2010).

letter was delivered.  Including the claim charts, the letter was 105 pages.  Apple has been aware of at least the '842, '227 and '568 Patents since at least October 29, 2020.

98.    Ryan Yang of Apple confirmed receipt of the letter on October 30, 2020, and informed GenghisComm that Apple was reviewing it.

99.    On December 7, 2020, counsel for GenghisComm sent an email to Apple asking for an update on Apple's review.  Apple responded and proposed a discussion in December.  The parties spoke on December 17, 2020 to discuss which GenghisComm patents were standard essential and whether FRAND rates would apply.

100.    On January 4, 2021, GenghisComm sent a follow-up email addressing several of the issues raised on the December 17, 2020 call.

101.    On January 15, 2021, Apple sent a letter to GenghisComm alleging that the Apple does not need a license and that GenghisComm patents were invalid based the standards themselves and on what Apple said was prior art: the Galda reference Apple's letter said dated "May 6-9 2002."

102.    In response, on February 2, 2021, GenghisComm sent Apple a detailed letter explaining how GenghisComm's patents disclosed the features incorporated into relevant LTE standards prior to the standards adopting GenghisComm's inventions.

103.    On April 2, 2021, Apple sent its response to GenghisComm's February letter. Apple's letter re-iterated the points made in its January 15, 2021 letter, again arguing that the GenghisComm patents are invalid at least over the prior art versions of the LTE standard and other patents and printed publications, such as for example the Galda paper.

104.    On May 19, 2021, GenghisComm again responded with a detailed letter.

105.    Apple sent its response to GenghisComm's May 19, 2021 letter, again presenting

many of the same positions it had in its prior correspondence.

106.    The parties talked again on August 12, 2021.

107.    Apple did not provide any further substantive correspondence afterwards.

108.    On June 29, 2022, counsel for GenghisComm sent Apple an additional letter (including detailed claim charts) informing Apple that it infringed GenghisComm's 11,075,786 and 11,223,508 Patents.

109.    Apple responded on July 12, 2022, again denying the applicability of the patents to Apple's products, and again alleging invalidity in view of alleged prior art, the Galda reference.

110.    The same Apple letter stated that GenghisComm's licensing offers were not consistent with Apple's FRAND framework for the valuation of SEPs, despite GenghisComm's lack of FRAND obligations.

111.    On December 21, 2022, GenghisComm sent Apple an additional letter (including detailed claim charts) informing Apple that it infringed GenghisComm's 11,252,005, 11,381,285 and 11,424,792 Patents.

112.    Apple responded on March 6, 2023 without significantly altering its original positions on FRAND, infringement and validity.

113.    GenghisComm responded on March 17, 2023, again explaining that GenghisComm does not have FRAND obligations because it did not participate in standard setting, and because no agreement existed that imposed any FRAND obligations on GenghisComm.

114.    GenghisComm had provided its 2022 GenghisComm Handset and Tablet Royalty Rate Card to Apple by no later than December 20, 2023.

115.    GenghisComm further informed Apple that the 2022 rates offered would only be available until the end of 2023, at which point rates would increase in 2024.  GenghisComm also provided Apple with its Genghiscomm's 2024 Handset and Tablet Royalty Rate Card no later than July 2, 2024.

116.    In addition to all of GenghisComm's other efforts to offer Apple a patent license since 2020, some of which are detailed above, on July 2, 2024, GenghisComm's counsel made Apple aware of Unified's *ex parte* reexamination, explaining, in relevant part:

> Of course, if Unified Patents wins in its ex parte examination, Apple will benefit. However, if GenghisComm wins the ex parte re-examination and keeps its patent claims, the rate card requires that the royalty rate will increase by $.072 for that '227 patent, bringing the total rate for that scenario to $.21 per unit, which is still discounted from the *Georgia Pacific* trial rate that GenghisComm will seek at trial, as shown on the rate card, $1.296 or more per unit. I'm re-attaching the 2024 royalty rate card for Apple's convenient reference again here.

> As explained in our prior letters and emails since 2020, GenghisComm's patents are essential to the technical standards, and essential to the technical operation of Apple's phones and other devices. However, unlike many other patent holders, GenghisComm has no FRAND or RAND contractual obligations because the standard setting bodies included GenghisComm's invented technologies in their technical standards and requirements without GenghisComm's involvement or consent.

> Please let us know if Apple is interested in entering a settlement agreement. We continue to prefer to resolve this patent issue on friendly terms.

117.    No one from Apple ever responded to the above email from July 2, 2024.

118.    In October of 2025, the PTAB issued an Order reversing the Examiner's reexamination of the '227 patent (in response to Unified Patents' request for reexamination). Exhibit C.

119.    On February 26, 2026, the USPTO issued a Reexamination Certificate.  Exhibit D.

120.    GenghisComm continued to offer Apple a license at the rate card rates.

121.    Apple never agreed to enter into any licensing agreement with GenghisComm.

122.    This Complaint serves as additional notice to Apple for each of the Patents-in-Suit and the manner in which the Patents-in-Suit are infringed.

123.    Despite knowledge of the Patents-in-Suit and knowledge of the manner in which the Patents-in-Suit are infringed as demonstrated in the provided claim charts, Apple has continued to infringe, and/or induce the infringement of, the Patents-in-Suit through patent expiration.

## COUNT 1: INFRINGEMENT OF U.S. PATENT 9,768,842

124.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

125.    On September 19, 2017, the '842 Patent entitled "Pre-coding in multi-user MIMO" was duly and legally issued by the USPTO.

126.    The '842 Patent has a priority claim to earlier applications no later than May 14, 2002.

127.    For the '842 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of November 2, 1999.[15]

128.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the "LTE Standard") and its requirements for uplink physical channel communications.  These communications were sent from Apple's LTE/4G Devices to eNodeB receivers located at cell sites.

129.    Apple infringed the '842 Patent claims for at least the reasons set forth in the

---

[15] Notably, this is before Apple's purported date for the Galda reference of May 6-9, 2002.

claim charts attached as Exhibits E and F, which is incorporated by reference in this Complaint.

130.    Apple has made, used, sold, imported, and/or offered for sale Apple's LTE/4G

Devices that met each and every element of the claims of the '842 Patent.

131.    Apple had notice of infringement and knowledge of the '842 Patent since October

29, 2020.

132.    The '842 Patent expired on May 14, 2022.

133.    As a direct and proximate result of Apple's acts of patent infringement,

GenghisComm has been injured, and has sustained damages.

134.    Apple owes GenghisComm reasonable royalty damages for Apple's LTE/4G

Devices sold and used from October 29, 2020 to May 14, 2022.

135.    Apple's infringement was willful.

### COUNT 2: INFRINGEMENT OF U.S. PATENT 10,200,227

136.    GenghisComm incorporates by reference the allegations set forth in the preceding

paragraphs of this Complaint as though set forth in full herein.

137.    On February 5, 2019, the '227 Patent entitled "Pre-coding in multi-user MIMO"

was duly and legally issued by the USPTO.

138.    The '227 Patent has a priority claim to earlier applications no later than May 14,

2002.

139.    For the '227 Patent, Steve Shattil provided a swear behind declaration showing a

corroborated invention date of November 2, 1999.

140.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's

LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards

(e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the "LTE Standard") and its requirements for

uplink physical channel communications.  These communications were sent from Apple's

LTE/4G Devices to eNodeB receivers located at cell sites.

141.    Apple infringed the method claims of the '227 Patent for at least the reasons set forth in the claim chart attached as Exhibit G, which is incorporated by reference in this Complaint.

142.    Apple has made, used, sold, imported, and/or offered for sale Apple's LTE/4G Devices that met each and every element of the claims of the '227 Patent.

143.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

144.    Apple owes GenghisComm reasonable royalty damages for Apple's LTE/4G Devices extending back six years from the filing date of this Complaint until the '227 Patent expired.[16]

145.    Apple had notice of infringement and knowledge of the '227 Patent since October 29, 2020.

146.    Apple's infringement was willful.

## COUNT 3: INFRINGEMENT OF U.S. PATENT 10,389,568

147.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

148.    On August 20, 2019, the '568 Patent entitled "Single carrier frequency division multiple access baseband signal generation" was duly and legally issued by the USPTO.

149.    The '568 Patent has a priority claim to earlier applications no later than May 14,

---

[16] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

2002.

150.    For the '568 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of November 2, 1999.

151.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the "LTE Standard") and its requirements for uplink physical channel communications.  These communications were sent from Apple's LTE/4G Devices to eNodeB receivers located at cell sites.

152.    Apple infringed method claims of the '568 Patent for at least the reasons set forth in the claim chart attached as Exhibit H, which is incorporated by reference in this Complaint.

153.    Apple has made, used, sold, imported, and/or offered for sale Apple's LTE/4G Devices that met each and every element of the claims of the '568 Patent.

154.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

155.    Apple owes GenghisComm reasonable royalty damages for Apple's LTE/4G Devices extending back six years from the filing date of this Complaint until the '568 Patent expired.[17]

156.    Apple had notice of infringement and knowledge of the '568 Patent since October 29, 2020.

---

[17] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

157.    Apple's infringement was willful.

## COUNT 4: INFRINGEMENT OF U.S. PATENT 11,252,005

158.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

159.    On February 15, 2022, the '005 Patent entitled "Spreading and precoding in OFDM" was duly and legally issued by the USPTO.

160.    For the '005 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of April 16, 2003.

161.    The USPTO already considered the Galda reference during prosecution: GenghisComm's '005 Patent lists the Galda reference on page 5 of the patent.

162.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's 5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the "5G Standard") and its requirements.

163.    Apple's 4G/LTE Devices meet each and every element of some of the asserted claims of the '005 Patent, (e.g. Apple's 4G/LTE devices meet claim 1).

164.    Apple infringed method claims of the '005 Patent for at least the reasons set forth in the claim chart attached as Exhibit I, which is incorporated by reference in this Complaint.

165.    Apple has made, used, sold, imported, and/or offered for sale Apple's 5G Devices (and Apple's 4G/LTE Devices) that met each and every element of the claims of the '005 Patent.

166.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practice the method claims for the reasons set forth in the infringement claim charts.

167.    Apple owes GenghisComm reasonable royalty damages for Apple's Devices

extending back six years from the filing date of this Complaint until the '005 Patent expired.[18]

168.    Apple had notice of infringement and knowledge of the '005 Patent since December 21, 2022.

169.    Apple's infringement was willful.

## COUNT 5: INFRINGEMENT OF U.S. PATENT 11,381,285

170.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

171.    On July 5, 2022, the '285 Patent entitled "Transmit pre-coding" was duly and legally issued by the USPTO.

172.    The '285 Patent has a priority claim to earlier applications no later than August 2, 2004.

173.    For the '285 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of February 7, 2003.

174.    The USPTO considered Galda reference during prosecution: GenghisComm's '285 Patent lists the Galda reference on page 7 of the patent.

175.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's 5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the "5G Standard") and its requirements.

176.    Apple infringed method claims of the '285 Patent for at least the reasons set forth in the claim chart attached as Exhibit J, which is incorporated by reference in this Complaint.

177.    Apple made, used, sold, imported, and/or offered for sale Apple's 5G Devices that

---

[18] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

met each and every element of the claims of the '285 Patent.

178.    Apple's 4G/LTE Devices met each and every element of the asserted claims of the '285 Patent, except claim 9 (e.g. Apple's 4G/LTE devices meet claim 1 and 7).

179.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

180.    Apple owes GenghisComm reasonable royalty damages for Apple's Devices extending back six years from the filing date of this Complaint until the '285 Patent expired.[19]

181.    Apple had notice of infringement and knowledge of the '285 Patent since December 21, 2022.

182.    Apple's infringement was willful.

## COUNT 6: INFRINGEMENT OF U.S. PATENT 11,223,508

183.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

184.    On September 19, 2017, the '508 Patent entitled "Wireless communications using flexible channel bandwidth" was duly and legally issued by the USPTO.

185.    The '508 Patent has a priority claim to earlier applications no later than August 2, 2004.

186.    For the '508 Patent, Steve Shattil provided a swear behind declaration showing a corroborated invention date of April 24, 2002.

187.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's

---

[19] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

5G Devices, that use 5G networks and comply with the 5G wireless standard (e.g., 3GPP TS 38.211 version 15.2.0 Release 15; the "5G Standard") and its requirements.

188.    Apple infringed the method claims of the '508 Patent for at least the reasons set forth in the claim chart attached as Exhibit K, which is incorporated by reference in this Complaint.

189.    Apple has made, used, sold, imported, and/or offered for sale Apple's 5G Devices that met each and every element of the claims of the '508 Patent.

190.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

191.    Apple owes GenghisComm reasonable royalty damages for Apple's 5G Devices extending back six years from the filing date of this Complaint until the '508 Patent expired.[20]

192.    Apple had notice of infringement and knowledge of the '508 Patent since June 29, 2022.

193.    Apple's infringement was willful.

### COUNT 7: INFRINGEMENT OF U.S. PATENT 11,804,882

194.    GenghisComm incorporates by reference the allegations set forth in the preceding paragraphs of this Complaint as though set forth in full herein.

195.    On October 31, 2023, the '882 Patent entitled "Single Carrier Frequency Division Multiple Access Baseband Signal Generation" was duly and legally issued by the USPTO.

196.    The '882 Patent has a priority claim to earlier applications no later than July 22,

---

[20] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

2005.

197.    Apple made, used, sold, offered for sale, and imported wireless devices, Apple's LTE/4G Devices, that use 4G/LTE networks and comply with the 4G LTE wireless standards (e.g., 3GPP TS 36.211 version 8.7.0 Release 8; the "LTE Standard") and its requirements for uplink physical channel communications.  Apple continues to make, use, sell, offer for sale, and import these infringing wireless devices.

198.    Apple infringed the method claims of the '882 Patent for at least the reasons set forth in the claim chart attached as Exhibit L, which is incorporated by reference in this Complaint.

199.    Apple has made, used, sold, imported, and/or offered for sale Apple's LTE/4G Devices that met each and every element of the claims of the '882 Patent.

200.    For these method claims, to the extent that Apple argues that it is not the direct infringer, and that its phones do not directly infringe, Apple's customers (the end users) practiced the method claims for the reasons set forth in the infringement claim charts.

201.    Apple owes GenghisComm reasonable royalty damages for Apple's LTE/4G Devices extending back six years from the filing date of this Complaint.[21]

202.    After service of this complaint, Apple's ongoing infringement will be willful.

## APPLE'S WILLFUL INFRINGEMENT

203.    Apple has infringed the identified claims of each of the Patents-in-Suit despite its knowledge of the patents and its knowledge that Apple's LTE/4G Devices and Apple's 5G Devices were using the technology claimed by them since receiving notice from GenghisComm,

---

[21] *Crown Packaging Tech. v. Rexam Beverage Can*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) (35 U.S.C. § 287(a) did not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims; because Rexam asserted only the method claims of the '839 patent, the marking requirement of 35 U.S.C. § 287(a) does not apply.)

and the objectively high likelihood that its acts constitute patent infringement.

204.    After the dates of the notices from GenghisComm, Apple's infringement of the Patents-in-Suit is willful and deliberate, entitling GenghisComm to enhanced damages under 35 U.S.C. § 284.

205.    Apple's willful infringement and unwillingness to enter into license negotiations with GenghisComm make this an exceptional case such that GenghisComm should be entitled to recover its attorneys' fees and costs incurred in relation to this matter pursuant to 35 U.S.C. §285.

## JURY DEMAND

GenghisComm demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff GenghisComm requests that this Court enter judgment in its favor and against Apple as follows:

A.    Adjudging, finding, and declaring that Apple has infringed of the above-identified claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.    Awarding the past and future damages arising out of Apple's infringement of the Patents-in-Suit to GenghisComm in an amount no less than a reasonable royalty, together with prejudgment and post-judgment interest, in an amount according to proof;

C.    Adjudging, finding, and declaring that Apple's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

D.    Adjudging, finding, and declaring that this is an "exceptional" case pursuant to 35 U.S.C. § 285;

E.    Awarding attorney's fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 or 285 or as otherwise permitted by law; and

F.    Granting GenghisComm such other further relief as is just and proper, or as the

Court deems appropriate.


Dated: February 27, 2026                    Respectfully submitted,

                                            */s/ Alison Richards*
                                            Alison Aubry Richards
                                            (IL Bar # 6285669 *also admitted in WD Texas*)
                                            arichards@giplg.com
                                            Global IP Law Group, LLC
                                            55 West Monroe Street, Suite 3400
                                            Chicago, IL 60603
                                            Telephone: (312) 241-1500

                                            *Attorney for Plaintiff GenghisComm Holdings, LLC*